**Linda BAKER, Plaintiff,**

v.

**INTERSTATE BRANDS CORPORATION d/b/a Dolly Madison Cake Company, Bakery Confectionery and Tobacco Workers' Local Union 218, and Edward B. Moyer, Defendants.**

Civ. A. No. 91–4017–S.

United States District Court, D. Kansas.

Sept. 3, 1992.

---

458

Cortland E. Berry, Reading, Kan., for plaintiff.

Leonard Singer, Stephany J. Newport, Bioff, Singer & Finucane, Kansas City, Mo., for defendant Interstate Brands Corp.

Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, Kan., for defendants Local 218 Bakery, Confectionery and Tobacco Workers Intern. Union.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on the separate summary judgment motions of defendants Interstate Brands Corporation, d/b/a Dolly Madison Cake Company ("Dolly Madison") and Bakery Confectionery and Tobacco Workers' Local Union 218 ("Union").[1]

## NATURE OF THE CLAIM

In this action, plaintiff Linda L. Baker alleges that her former employer, defendant Dolly Madison, terminated her employment in breach of the collective bargaining agreement covering her job. In

addition, she contends that the defendant Union, her collective bargaining agent, breached its duty of fair representation in processing her grievance regarding the termination. Plaintiff's claim is properly characterized as a hybrid § 301/duty of fair representation action inasmuch as it is grounded in § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See United Steelworkers of America v. Rawson*, 495 U.S. 362, 373, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *McLinn v. Boeing Co.*, 715 F.Supp. 1024, 1029 (D.Kan.1989).

## JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a). Venue is proper under 28 U.S.C. § 1391(b)(2).

## SUMMARY JUDGMENT CONSIDERATION

Under Fed.R.Civ.P. 56(c), the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

1. Plaintiff's claim against Edward B. Moyer, an employee of defendant Union, was previously dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## UNCONTROVERTED FACTS

Plaintiff Linda Baker, formerly an employee of defendant Dolly Madison at its facility located in Emporia, Kansas, was terminated from her job on October 19, 1990, for violating her employer's attendance policy. At the time of her discharge, defendant Union was the exclusive bargaining representative for a unit of employees of which plaintiff was a member. Defendants Dolly Madison and Union were parties to a collective bargaining agreement governing the terms and conditions of employment. Edward Moyer was a member and elected official of the Union, and was employed full time as its business representative. His duties included filing and processing grievances on behalf of employee members.

Article XV of the union agreement read as follows:

The function of management shall include, among other things, the management and direction of the working forces including the right to plan, direct and control the Employer operations, suspend or discharge for proper cause, and the right to relieve employees because of lack of work or their [sic] legitimate reasons. This enumeration shall not be deemed to exclude other functions of management not herein specifically set forth, it being understood that the Employer has the sole jurisdiction over the manufacturing operations of the bakery, its methods of production and distribution, the direction of the working force, and the adoption and enforcement of company rules and regulations.

Article XIX of the agreement provided for a mandatory and exclusive grievance procedure. Although individual employees were entitled to file grievances, only the Union could authorize arbitration of a grievance.[2]

The written attendance policy in effect at Dolly Madison's Emporia facility on the date of plaintiff's termination had been in effect since July 1, 1989. Prior to its implementation, the policy had been negotiated between Dolly Madison management and Union representatives, and the Union had approved the policy. Before the policy was adopted, plaintiff, in her capacity as a union steward, attended meetings during which the proposed policy was explained. In addition, Dolly Madison issued a notice to all employees on July 20, 1990, that explained the new policy.

Under the written attendance policy, an employee could be classified as a "habitual absentee" under the following provision:

Employees who are absent 8 times in 12 months or receive two (2) same level warnings in 12 months shall be considered a "habitual absentee." Once notified of being a "habitual absentee" an employee shall be required to go an additional six months without an absence or

---

**2.** Section 2 of Article XIX provided, "Either party, under the terms of this Agreement may demand arbitration; however, no individual employee or member shall have the right to invoke arbitration without written consent of the Union."

be terminated. One absence during the six months for serious illness or injury shall be allowed provided the employee is treated by a physician and the physician certifies the need for the absence.

The notice dated July 20, 1990, explained the policy on habitual absentees as follows:

Once you become a habitual, you must work six (6) months from receiving the habitual warning. You must not get a total of one (1) point in this six-month period, or you are terminated. (Except for the following:)

Only one (1) absence shall be allowed during this six-month period for serious illness or injury provided the employee is treated by a physician and the reason for the absence is verifiable by the treating physician.

Under the policy in effect at the time of plaintiff's discharge, an employee who missed an entire work day was charged with one point. If the employee arrived late or left early, half a point was assessed. Points were charged for absences whether or not due to illness.

Plaintiff was given oral and written warnings concerning her poor attendance record on May 19, 1987; April 4, 1988; June 19, 1988; July 12, 1988; March 21, 1989; June 16, 1989; November 4, 1989; and September 25, 1990. The written warnings, which she signed, show that plaintiff was absent four entire days in 1987, seven in 1988, eight in 1989, and two in 1990. On several other days, particularly in 1990, plaintiff left work early or went home sick. Each written warning advised her of the possibility of termination if her poor attendance continued. She did not file grievances concerning any of these warnings.

Plaintiff was classified as an habitual absentee on two separate occasions under the attendance policy. On November 4, 1989, she was advised in writing that her attendance was habitually poor, that she had accumulated nine absences within the past 12 months, and that any further absence within the next six months would result in her termination. She was also advised that "[o]ne absence during the six (6) months for serious illness or injury shall be allowed provided you are treated by a physician and the physician certifies the need for the absence." Plaintiff read and signed the written notice.

On September 25, 1990, she was again advised that her attendance was habitually poor. The written notice indicated she had accumulated four and one-half absences, and that any further absence within the next six months, or until March 25, 1991, would result in termination. She was again advised that one absence within the next six months for serious illness or injury would be allowed "provided you are treated by a physician and the physician certifies the need for the absence." Plaintiff also read and signed this written notice.

On October 19, 1990, plaintiff was scheduled to work at 2 p.m., but she was absent. She was not seriously ill, nor was she treated by a physician; however, she was absent due to the illness of her daughter. Late that afternoon plaintiff delivered to her employer a doctor's verification dated October 19, 1990, which stated that she had been in the emergency room with her daughter, who was experiencing a severe seizure. Plaintiff was nevertheless immediately terminated for violating the habitual absentee policy. She did not offer to finish her shift, nor was she asked to do so.

Plaintiff protested her discharge by filing a grievance pursuant to the collective bargaining agreement. Edward Moyer represented plaintiff in his capacity as the Union's business representative in the processing of her grievance. He prepared a written grievance for plaintiff and delivered it to Dolly Madison on October 24, 1990, after plaintiff reviewed and approved it. The grievance stated:

On or about 10–19–90 Linda Baker had to call in to work and was terminated by the company as the result of her attendance. The company should accept her doctor slip and reinstate her to her former position with all seniority, back pay and benefits. The Union requests that Ms. Baker be allowed to make arrangements for her daughter's illness in circumstances beyond her control.

Plaintiff met on October 24, 1990, with Edward Moyer ("Moyer") and Robert Lincoln ("Lincoln"), Dolly Madison's personnel manager, to discuss the grievance. Lincoln advised plaintiff that the company's policy did not excuse an absence by an employee on "habitual absentee" status due to the illness of a family member. Plaintiff contended that other Dolly Madison employees had been excused for serious illness or injury of family members without being terminated. Moyer attempted to persuade Lincoln to reinstate plaintiff to her job, but Lincoln adamantly refused to do so.

Pursuant to grievance procedures in the collective bargaining agreement, Moyer told plaintiff that he would submit her grievance to the Union's Executive Board ("Board") at its meeting on November 27, 1990. The Executive Board is empowered under the agreement to make the final decision on behalf of the Union whether to pursue a particular grievance to arbitration. Plaintiff requested that Moyer present her case to the Executive Board, and she did not attend the meeting although she was free to do so.

At the November meeting of the Executive Board, Moyer reported the termination of plaintiff for attendance while on habitual absentee status, and the Board decided to obtain legal advice concerning her termination. At its next meeting on December 18, 1990, Moyer reported to the Executive Board regarding the legal opinion he had obtained as to the merits of plaintiff's grievance. The Board voted to drop the grievance as lacking sufficient merit to warrant pursuing it to arbitration. On January 3, 1991, the Executive Board notified plaintiff of its decision not to arbitrate her grievance.

## INTERRELATION OF PLAINTIFF'S CLAIMS

■ The gravamen of plaintiff's complaint is that she was wrongfully terminated by her employer, Dolly Madison, in violation of the collective bargaining agreement. She is entitled to bring this suit on her own behalf under 29 U.S.C. § 185(a). *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). However, when a collective bargaining agreement contains grievance and arbitration procedures which are intended to provide the exclusive remedy for breach of contract claims, as in this case, the employer may defend on the ground that the exclusive remedies provided by the contract have not been exhausted. *See, e.g., Wynn v. Boeing Military Airplane Co.,* 595 F.Supp. 727, 728 (D.Kan. 1984) (absent exhaustion of union grievance procedures, court lacks jurisdiction over breach of express contract claims). Since Linda Baker's claim is based on breach of the collective bargaining agreement, she is bound by the terms of that agreement governing the manner in which her contractual rights may be enforced. *See Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1966) (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)); *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1273 (D.Kan.1985) (citing *Republic Steel*). Indeed, Dolly Madison defends in part on the basis that plaintiff failed to exhaust her remedies under the collective bargaining agreement.

■ However, the United States Supreme Court has recognized that such contractual remedies, devised by and often directly controlled by the union and the employer, may be unworkable for individual grievants in certain situations. *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914. For example, if the union has the sole power to invoke the higher stages of the grievance procedure, such as arbitration, and if the plaintiff has been prevented from exhausting his contractual remedies due to the union's wrongful refusal to process the grievance, the employee may seek judicial enforcement of his contractual right notwithstanding the fact that he has not fully exhausted his remedies under the collective bargaining agreement. *Id.* Otherwise, a wrongfully discharged employee could be frustrated in obtaining a remedy against the employer solely because his union breached

its separate duty to fairly represent him in pursuing the grievance process. *Id.; see also Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 570, 96 S.Ct. at 1059.

Consequently, Linda Baker may sue Dolly Madison directly for wrongful discharge in the face of its defense based upon failure to exhaust contractual remedies, but only if she can prove that the Union, as bargaining agent, breached its duty of fair representation in handling her grievance, thereby frustrating her attempts to vindicate her termination by contractual remedy. *See Vaca,* 386 U.S. at 186, 87 S.Ct. at 914. In such a case the court may determine whether plaintiff's suit against the employer is barred by the actions of her union representative, and, if not, to proceed on to decide the case against the employer. *Id.* at 186–87, 87 S.Ct. at 914–15; *see also United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981) (indispensable predicate for action against employer under 29 U.S.C. § 185(a) is a demonstration that union breached its duty of fair representation, not a showing that discharge breached the collective bargaining agreement). If the Union did not breach its duty of fair representation in pursuing plaintiff's grievance, her claim against her employer for wrongful discharge necessarily fails as well because of the exclusive nature of the remedies provided her by the collective bargaining agreement. *See Vaca,* 386 U.S. at 185, 87 S.Ct. at 914 (if union has sole power to invoke higher stages of grievance procedure, and if employee has been prevented by the union from exhausting his contractual remedies by wrongfully refusing to process the grievance, employee may sue employer despite failure to secure relief through contractual remedy); *cf. Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (employee must attempt use of the contract grievance procedure and afford union the opportunity to act on his behalf before resorting to court); *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1488–89 (7th Cir.1985) (plaintiff made no attempt to enlist union's support in grieving his dismissal; hence his claim against employer for violation of collective bargaining agreement is precluded).

The defendants contend that plaintiff, in order to prevail against *either* her employer or her union, must prove (1) her employer wrongfully discharged her *and* (2) the Union breached its duty of fair representation by failing to submit her grievance to arbitration. A careful reading of the pertinent case law, however, requires the court to reject the defendants' argument. If the employee's grievance has not been submitted to arbitration as the final step in the contractual grievance procedure, the employer retains the right to defend on the ground that the employee has failed to exhaust her contractual remedies. In order to prevail in a court action against the *employer* under 29 U.S.C. § 185(a), the plaintiff must first prove the union breached its duty of fair representation, and further that she was wrongfully discharged by the employer in breach of the contract. However, the plaintiff need not prove her wrongful discharge claim in order to prevail against the Union for failing to fairly represent her in pursuing her grievance. Conversely, proof that the grievance against the employer was meritorious is insufficient by itself to show a breach by the Union of its duty of fair representation. *See Vaca,* 386 U.S. at 193, 195, 87 S.Ct. at 918, 919; *McLinn v. Boeing Co.,* 715 F.Supp. 1024, 1031, 1033 (D.Kan.1989) (citing *Salinas v. Milne Truck Lines, Inc.,* 846 F.2d 568, 569 (9th Cir.1988) and *Brown v. Trans World Airlines, Inc.,* 746 F.2d 1354, 1359 (8th Cir. 1984)).

The cases cited by defendants to support their argument that plaintiff must prove both claims in order to recover against either the union or the employer are the progeny of *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). In each of the cited cases, however, the employee's grievance was ultimately arbitrated or otherwise brought to ultimate binding resolution under the labor agreement, resulting in a finding in favor of the employer. *See Del-*

*Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 155, 157, 103 S.Ct. 2281, 2285, 2286, 76 L.Ed.2d 476 (1983); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 58, 101 S.Ct. at 1561; *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 557–58, 96 S.Ct. at 1052–53. In such a situation, the plaintiff must bear a heavier burden to prevail in court on her wrongful discharge claim. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 61, 101 S.Ct. at 1563 (employee may go behind final and binding award under collective bargaining agreement and seek relief against union and employer only when he shows the union's breach of duty seriously undermined integrity of the arbitral process); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 567–68, 96 S.Ct. at 1057–59 (if union's breach of duty seriously undermines the integrity of arbitral process, it removes the bar of the finality provisions of the contract).

▆ In contrast, if an employee's grievance has not been pursued to final resolution under the labor contract, the court need not set aside a final and binding award to ensure a proper remedy. If the court determines that the union breached its duty of fair representation in processing the grievance, a court order compelling the union to submit the grievance to arbitration may be sufficient to vindicate the alleged wrongful discharge without undue court interference with the collective bargaining agreement. *See Vaca v. Sipes,* 386 U.S. at 196, 87 S.Ct. at 919 (order compelling arbitration is one available remedy when a breach of union's duty is proved); *Varra v. Dillon Companies, Inc.,* 615 F.2d 1315, 1316 (10th Cir.1980) (integrity of the bargaining agreement grievance procedure is maintained by allowing all possible cases to be funneled through it; suit against employer premature when union may yet cure its wrong, if there is one). For the court to determine the ultimate question underlying the grievance against the employer would undermine the policy underlying the exhaustion of remedies rule—to permit labor organizations the opportunity to resolve disputes before union members bring the

disputes before the courts. *Cf. Varra,* 615 F.2d at 1317.

The court finds that the *Vaca* analysis is applicable to the facts of the case presently before the court for determination. Consequently, plaintiff need not survive summary judgment in favor of Dolly Madison on her wrongful discharge claim in order to maintain her claim against the Union for breach of its duty of fair representation in the grievance process. However, if she cannot survive summary judgment on her claim against defendant Union, her claim against Dolly Madison for wrongful discharge automatically fails; if she cannot demonstrate a breach of the union's duty of fair representation, she is limited to her exclusive contractual remedies, which concluded with the Union's determination that the grievance lacked sufficient merit to warrant its submission to arbitration.

## DUTY OF FAIR REPRESENTATION

Plaintiff claims that the Union breached its statutory duty of fair representation it owed to her as her collective bargaining agent. Specifically, she contends that the Union breached its duty by failing to submit her grievance to arbitration. Further, she argues that Edward Moyer, the Union official who assisted her with her grievance, failed to fully present her case to the Executive Board in her absence, and failed to inform her of the date of the December meeting at which the Executive Board allegedly decided not to submit her claim to arbitration.

The United States Supreme Court has identified three components to the duty of fair representation. The duty may be breached if the Union's actions are either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill,* — U.S. —, —, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes,* 386 U.S. at 177, 190, 87 S.Ct. at 909, 916. The United States Supreme Court has recently held that mere negligence, even in the enforcement of a collective-bargaining agreement, does not state a claim for breach of the duty of fair representation. *United Steelworkers of America v. Rawson,* 495

U.S. 362, 372–73, 376, 110 S.Ct. 1904, 1910–12, 1913, 109 L.Ed.2d 362 (1990). The doctrine of fair representation is a purposefully limited check on the arbitrary exercise of union power, because a statutory bargaining representative must be allowed a wide range of reasonableness in serving the unit it represents. *Id.* at 374, 110 S.Ct. at 1912 (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)).

A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots Ass'n v. O'Neill,* —— U.S. at ——, ——, 111 S.Ct. at 1130, 1136.

For the union's actions to be discriminatory in violation of the duty of fair representation, they must be based on invidious distinctions such as race, gender, national origin, or citizenship; or they must exhibit hostility based on political differences, exercise of free speech, or personal animosities. *See, e.g., Air Line Pilots Ass'n,* —— U.S. at ——, 111 S.Ct. at 1134 (invidious distinctions); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 202–03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944) (race); *N.L.R.B. v. Local No. 106 Glass Bottle Blowers Ass'n,* 520 F.2d 693, 697 (6th Cir. 1975) (gender); *N.L.R.B. v. International Longshoremen's Ass'n, Local No. 1581,* 489 F.2d 635, 637 (5th Cir.) (national origin), *cert. denied,* 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 316 (1974); *Thompson v. Brotherhood of Sleeping Car Porters,* 316 F.2d 191, 200 (4th Cir.1963) (hostility based on sporadic union membership); *see also International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 60, 99 S.Ct. 2121, 2132, 60 L.Ed.2d 698 (1979) (Blackmun, J., concurring). Distinctions on the basis of factors relevant to the collective bargaining agreement, such as seniority, the type of work performed, competence, and skill, do not constitute a breach of the duty of fair representation. *See Steele,* 323 U.S. at 203, 65 S.Ct. at 232; *Thompson,* 316 F.2d at 200. A claim of discrimination as the basis of a breach of the duty of fair representation requires "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives...." *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971).

Finally, the union's conduct is in bad faith only if there is substantial evidence of fraud, deceitful action, or dishonest conduct. *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964); *see Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1275 (D.Kan.1985) (plaintiff alleged conspiracy between union and employer to circumvent collective bargaining agreement by reopening employer's plant under different name).

Plaintiff's primary argument is that the Union breached its duty of fair representation by arbitrarily failing to pursue her claim to arbitration. However, a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled a grievance short of arbitration. *Vaca,* 386 U.S. at 192, 87 S.Ct. at 917. An employee has no absolute right to have the union take her grievance through every stage of the grievance process. *Chernak v. Southwest Airlines,* 778 F.2d 578, 581 (10th Cir.1985) (citing *Vaca,* 386 U.S. 171, 87 S.Ct. at 9; *McLinn v. Boeing Co.,* 715 F.Supp. 1024, 1031 (D.Kan. 1989). Nor can the plaintiff compel the union to pursue a grievance having no legal merit. *Chernak,* 778 F.2d at 581.

A careful reading of the record reveals no factual controversy material to the issue of whether the defendant Union complied with its duty to fairly represent the plaintiff in pursuing her grievance. Even if the additional facts alleged by the plaintiff are accepted as true, the court cannot conclude that the Union breached its duty of fair representation by acting arbitrarily. Viewing the facts from the standpoint of the Executive Board at the time it considered plaintiff's grievance, it

was well within the bounds of reasonableness to determine that the plaintiff's claim lacked sufficient merit to warrant arbitration.

Plaintiff had a negative record of past absences that were well documented. She had been placed on habitual absentee status twice within the prior year. She had received and signed two written statements placing her on habitual absentee status, and she had been informed of the possibility of discharge if she were absent again within the next six months. The plaintiff was a union steward, and acknowledged that she understood the attendance policy and the written warnings regarding her habitual absences. The court need not, and does not, decide whether plaintiff's discharge by the employer was a breach of contract. However, the court cannot conclude that any reasonable juror could find that the Union's decision not to arbitrate plaintiff's grievance was so far outside a wide range of reasonableness as to be irrational. *See Air Line Pilots Ass'n v. O'Neill*, —— U.S. at ——, 111 S.Ct. at 1130.

Although plaintiff tangentially asserts the Union discriminated against her by pursuing arbitration in another case in which an employee on habitual absentee status was terminated for being absent due to her child's illness, the uncontroverted facts concerning the other termination are sufficient to support the court's conclusion that the Union did not discriminate against the plaintiff on the basis of any impermissible factors.[3] The Union has demonstrated to the court's satisfaction that its decision to arbitrate the other grievance had a plausible basis; unlike plaintiff, the other employee had sought and relied upon a statement made by her supervisor in advance of her absence. In contrast, plaintiff's evidence shows that she failed to obtain approval from a supervisor in advance of her absence from work.

Finally, the plaintiff has not alleged facts sufficient to support her claim that the defendant Union acted in bad faith. It is uncontroverted that Edward Moyer prepared a grievance on her behalf and submitted it to Dolly Madison's personnel manager. He also specifically requested her reinstatement. After this request was denied, he complied with plaintiff's request that he attend the meeting of the Executive Board on her behalf.[4] On December 18, 1990, he advised the Executive Board of the legal opinion he had obtained as to the merits of plaintiff's grievance. Plaintiff does not contend that the Executive Board harbored any personal hostility toward her or acted on the basis of any improper mo-

---

**3.** Plaintiff also contends that other individuals were permitted absences due to the health problems of children without being terminated, and she concludes that Dolly Madison therefore had an unwritten policy of permitting such absences. While these assertions may be relevant to the plaintiff's claim for wrongful discharge, they are not material to her claim for breach of the duty of fair representation by the Union. Since the court does not reach plaintiff's wrongful discharge claim, her contention that the employment contract was modified by the alleged unwritten policy has not been considered.

Even if the plaintiff contends that the Union should have considered this theory in deciding whether to arbitrate the grievance, she has failed to assert facts sufficient to conclude that the Union's failure to do so was anything more than negligence. Further, the court is persuaded by the fact that the plaintiff did not attend either of the Board's meetings at which her grievance was considered. The uncontroverted facts support the court's inference that she knew or should have known of the Executive Board's meeting schedule, and she could have attended both meetings had she chosen to do so.

**4.** While plaintiff has submitted her own affidavit alleging that Edward Moyer failed to fully explain her allegations to the Executive Board concerning other individuals whose absences were allegedly excused due to the illness of children, she admitted she was not present at either of the Executive Board meetings at which her grievance was discussed. As defendants point out, affidavits submitted in response to a motion for summary judgment must be made on personal knowledge. See Fed.R.Civ.P. 56(e); D.Kan.Rule 206(c). Plaintiff has not submitted any other evidence concerning Edward Moyer's statements on her behalf to the Executive Board except the rather sparse minutes of its meetings. However, the affidavit of Edward Moyer, who was present at both meetings, shows that he explained plaintiff's grievance in full to the Board, including the fact that she was absent due to the serious illness of her daughter. Plaintiff has not submitted affidavits from others present at the Executive Board meetings to refute Moyer's assertions.

tive. Plaintiff has not presented any evidence of fraud, deceitful action, or dishonest conduct.[5]

In summary, plaintiff has failed to present sufficient acceptable evidence to create any factual issues so material as to question the substantial deference otherwise accorded the Union's decision not to pursue a grievance. *See McLinn v. Boeing Co.,* 715 F.Supp. at 1032.

### CONCLUSION

Because the plaintiff has not shown the existence of genuine issues of material fact pertinent to her claim against the Union for breach of its duty of fair representation, the court must grant summary judgment in favor of defendant Union. As a consequence, plaintiff is barred as a matter of law from pursuing her wrongful discharge claim against her former employer, Dolly Madison, because she is limited to her remedies under the collective bargaining agreement, which have been exhausted.[6]

IT IS BY THE COURT THEREFORE ORDERED that defendant Union's motion for summary judgment (Doc. 30) and defendant Dolly Madison's motion for summary judgment (Doc. 70) are hereby granted.

IT IS BY THE COURT FURTHER ORDERED that the defendants' objections to the order granting plaintiff a jury trial (Docs. 76 and 77) are overruled as moot.

---

**5.** Although plaintiff contends that Moyer failed to inform her about the Board's deferral of its decision on her grievance to December 18, 1990, she does not contend that he intended to deceive her or acted dishonestly. As the court has noted, mere negligence does not state a claim for breach of the duty of fair representation. *See United Steelworkers of America v. Rawson,* 495 U.S. at 372–73, 376, 110 S.Ct. at 1911–12, 1913.

**6.** The court has determined that oral argument would not materially advance the resolution of the defendants' summary judgment motions. Defendant Dolly Madison's request for oral argument (Doc. 80) is therefore denied. *See* D.Kan.Rule 206(d).