**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL NO. 1581, AFL-CIO, Respondent.**

No. 73-1245.

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1974.

Rehearing Denied April 16, 1974.

Elliott Moore, Acting Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Clifford W. Potter, Dir. Region 23, N. L.R.B., Houston, Tex., Joseph E. Mayer, Washington, D. C., for petitioner.

Warner F. Brock, Gerald J. Goodwin, Houston, Tex., for respondent.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against the respondent International Longshoremen's Association, Local No. 1581, AFL-CIO. The order directs the Union to desist from maintaining and enforcing a discriminatory agreement allowing preferences in job referrals to be based upon citizenship and residence of a prospective employee's family and

requires the Union to take affirmative action to make whole an employee, Elias Gonzalez Guerra, for loss of pay suffered by him as a result of the discrimination. We grant enforcement.

The facts were stipulated before the Board's Administrative Law Judge. The Union represents employees in both the dock and commodity department and the cotton compress and cotton warehouse department of the Manchester Terminal Corporation, a company with its principal place of business in Houston, Texas. A single labor agreement covers employees in both departments. All rates of pay for the eleven job classifications in the dock and commodity department are higher than any of the rates of pay for the forty-odd classifications in the cotton compress and cotton warehouse departments.

During contract negotiations in 1965, the Union requested that union job referrals to the employer give preference to United States citizens. Manchester acceded to the request. Accordingly, the Union established a priority system for referrals by the Union for jobs in the preferred dock and commodity department. Under this system, highest priority went to United States citizens; second priority went to Mexican nationals with families residing in the United States; and lowest priority went to Mexican nationals whose families remained in Mexico. Only United States citizens or persons who had declared their intention to become United States citizens were eligible for membership in the Union.

Guerra was employed by Manchester in 1960, and worked in the dock and commodity department from 1963 until September 7, 1965. Guerra is a Mexican citizen and maintains his family in Mexico. After Manchester and the Union had agreed to establish a system of priorities for job referrals based on citizenship, Guerra was transferred, at the Union's request, from the dock and commodity department to the cotton compress and warehouse department, on September 7, 1965. At the time Guerra was told he could not have permanent employment in the dock and commodity department unless he became a United States citizen or moved his family from Mexico. Guerra has worked regularly in the cotton compress and warehouse department since September 7, 1965.

There were differences in the hospitalization plan effective for the workers in the two departments. Under the hospitalization plan effective for the dock and commodity department, both the employee and his family are eligible for hospitalization benefits. Under the plan in effect for workers in the cotton compress and cotton warehouse department, only the employee is eligible for hospitalization benefits.

Guerra brought unfair labor practice charges on October 7, 1965. The Board issued a complaint on May 28, 1971, alleging unfair labor practices under § 8(b)(1)(A), (b)(2) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A), (b)(2) (1970). The Board's Administrative Law Judge issued his decision, recommending dismissal of the complaint, on October 27, 1971. On May 22, 1972, the Board reversed the Administrative Law Judge and issued the order it seeks here to have enforced.[1]

---

1. 1. The Board's order in pertinent part provided:

Pursuant to Section 10(c) of the National Labor Relations Act, as amended, the National Labor Relations Board orders that Respondent, International Longshoremen's Association, Local No. 1581, AFL–CIO, its officers, agents, and representatives, shall:

1. Cease and desist from:

(a) Executing, maintaining, performing, or enforcing any agreement, understanding, or practice with the Employer herein, or with any other employer, which allows preferences in job referrals based on citizenship or the residence of the prospective employee's family.

(b) Causing or attempting to cause the Employer herein, or any other employer, to discriminate against employees or prospective employees in violation of Section 8(a)(3) of the Act.

■ Section 8(b)(2) of the National Labor Relations Act makes it an unfair labor practice "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section". Subsection (a)(3) makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization". Under the Supreme Court's decision in Radio Officers' Union v. NLRB, 1954, 347 U.S. 17, 42–43, 74 S.Ct. 323, 98 L.Ed. 455, a violation of § 8(b)(2) may be found if two elements are present: (1) an impermissible discrimination by the Union, which (2) causes or tends to result in the encouragement or discouragement of union membership.

■ In this case, there was substantial evidence to support a finding by the Board that the first of these elements was present. Section 8(b)(2) is not concerned solely with situations where the discrimination involved is between union members and nonmembers, or between "good" members and "bad, or indifferent" members (see Radio Officers, supra, 347 U.S. at 40). It applies where the union has induced the employer to discriminate on the basis of any invidious or arbitrary classification, such as the classification based upon alienage involved in this case. NLRB v. Miranda Fuel Co., 2 Cir. 1963, 326 F.2d 172, 180–186 (Friendly, J., dissenting); Sovern, The National Labor Relations Act and Racial Discrimination, 1962, 62 Colum.L.Rev. 563, 569–71; cf. Local Union No. 12, United Rubber, etc. Workers of America v. NLRB, 5 Cir. 1966, 368 F.2d 12.

■ The Supreme Court has made it clear that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." Graham v. Richardson, 1971, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534. "[Although] the Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores . . . once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders." Hellenic Line Limited v. Rhoditis, 1970, 398 U.S. 306, 309 n. 5, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252, quoting from Bridges v. Wixon, 1945, 326 U.S. 135, 161, 65 S.Ct. 1443, 89 L.Ed. 2103 (Murphy, J., concurring). The Supreme Court has struck down state classifications designed "to prevent lawfully admitted aliens within its borders from earning a living in the same way that other state inhabitants earn a living." Takahashi v. Fish and Game Commission, 1948, 334 U.S. 410, 418–419, 68 S.Ct. 1138, 1142, 92 L.Ed. 1478; see Truax v. Raich, 1915, 239 U.S. 33, 38–42, 36 S.Ct. 7, 60 L.Ed. 131. Since classifications based on citizenship, like classifications based on race, are arbitrary and invidious, the Board properly determined that the Union engaged in impermissible discrimination under the Act when it caused Guerra's transfer because he was an alien. See, NLRB v. Local 1367, ILA, C.A. 5, 1966, 368

(c) In any other manner restraining or coercing employees or prospective employees of the Employer herein, or any other employer in the exercise of their rights guaranteed in Section 7 of the Act, except to the extent that such rights may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8(a)(3) of the Act.

2. Take the following affirmative action which is designed to effect the policies of the Act:

(a) Make whole Elias Gonzalez Guerra for any loss of pay suffered by him as a result of the discrimination against him, in the manner set forth above in the section entitled "The Remedy."

(b) Notify the Employer herein that it withdraws all objections to Guerra's reinstatement as a permanent employee in the dock and commodity department retroactive to September 7, 1965, with a full restoration of seniority and all other rights and privileges accruing to him as a permanent employee from that date.

F.2d 1010, cert. denied, 389 U.S. 837, 88 S.Ct. 58, 19 L.Ed.2d 99 (violation of Section 8(b)(2) and (1)(A) for union to cause employer to discriminate on basis of race.)

There was also substantial evidence to support the Board in finding the second element present. The Board has recognized that a union's exercise of power to cause an employer to discriminate for arbitrary, irrelevant, or impermissible reasons may impermissibly encourage union membership or union activity. Miranda Fuel Co., 1962, 140 N. L.R.B. 181, enforcement denied, 2 Cir. 1963, 326 F.2d 172; Sovern, *supra*, at 569–71. This view reflects a recognition that the union's ability to effect this kind of discrimination is likely to have an intimidating effect on workers who might otherwise prefer to refrain from union membership or upon members who might like to refrain from any extensive union activity. Judge Friendly expressed this view well a decade ago:

> [The Board] could properly conclude that any such demonstration of union power to discriminate will lead nonmembers to become members in nonunion shops, in the belief that by doing so they will eliminate at least one basis for a union delegate or shop steward causing the employer to take arbitrary action against them . . . .
>
> Even if the Board had been required to limit its consideration to 'encouragement' within the Miranda Fuel Company, it could fairly conclude that action like that of the union here might tend to cause union members to be 'good' members rather than 'bad, or indifferent' members.

NLRB v. Miranda Fuel Co., 2 Cir. 1963, 326 F.2d 172 (Friendly, J., dissenting), quoting *Radio Officers, supra,* 347 U.S. at 40.

In holding that the discrimination effected by the respondent was not invidious, the Administrative Law Judge noted that hospitalization benefits for an employee's family were available only to workers in the dock and commodity department. He found that the union's policy of assuring preferences to workers with their families in the United States was intended "to restrict employment in the Dock and Commodity Department to employees eligible for family participation in the hospitalization program". On that basis, the Administrative Law Judge concluded that the policy had a "salutary effect on employment relations both from the standpoint of fixing company costs and equalizing benefits among employees".

There was substantial evidence, however, to support the Board's contrary conclusion. The Board pointed out that the Union's desire to maximize benefits from its hospitalization plan does not justify its action in regard to Guerra; the "policy of maximizing hospital benefits . . . cannot but work to the detriment of noncitizens of the United States". Besides, as the Board noted in its opinion, the Union's letter in response to Guerra's protest of his transfer made no mention of a desire to maximize benefits flowing to union members. Instead the Union asserted that "it was the feeling of the membership in general that we have no fellow workers who are not citizens of the country and have no desire to be a citizen or permanent resident of the country". Moreover, the Union did not request the transfer of groups other than aliens—such as single men—who could not avail themselves of the benefits of the family hospitalization plan.

The respondent, in its argument here, relies heavily upon NLRB cases permitting union hiring halls to discriminate in favor of local residents in arguing here that the discrimination effected by the Union was not arbitrary or invidious. Local Union No. 337, Plumbers and Fitters, 1964, 147 N.L.R.B. 929, 56 LRRM 1350; Plaza Builders, 134 N.L. R.B. 751, 49 LRRM 1220. That reliance is misplaced. The discrimination here was based upon citizenship, and upon the *national* residence of the employee's *family,* and not upon local residence.

Enforced.