# NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

**LOCAL NO. 106, GLASS BOTTLE BLOWERS ASSOCIATION, AFL-CIO, and Local No. 245, Glass Bottle Blowers Association, AFL-CIO, Respondents.**

No. 74-1931.

United States Court of Appeals, Sixth Circuit.

July 22, 1975.

694

Elliott Moore, Peter G. Nash, Deputy Associate Gen. Counsel, N. L. R. B., Robert A. Giannasi, Marion Griffin, Washington, D. C., Emil C. Farkas, Director, Region 9, N. L. R. B., Cincinnati, Ohio, for petitioner.

Howard S. Simonoff, Plone, Tomar, Parks & Seliger, Camden, N. J., for respondents.

Before PHILLIPS, Chief Judge, and EDWARDS and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

This case presents the question of whether a labor union with a bargaining relationship in a plant commits an unfair labor practice by maintaining two different locals segregated on the basis of sex and by segregated processing of grievances. The National Labor Relations Board, in a badly split decision, answered this question in the affirmative, and ordered the merger of the two segregated Local Unions. The decision of the Board is reported at 210 N.L.R.B. No. 131 (1974).

We enforce the order of the Board.

Locals 106 and 245 of the Glass Blowers Association, AFL–CIO, (Locals or Local Unions) serve as joint bargaining representatives for the production and maintenance employees of Owens-Illinois, Inc., at its plant in Columbus, Ohio. In 1949 the parent International Union, the Glass Bottle Blowers Association, AFL–CIO (International Union), entered into a contract with Owens-Illinois. From the outset of this contractual relationship there have been two separate locals which service the agreement: Local 106, which confines its membership to men, and Local 245, which confines its membership to women. There are approximately 800 male employees and approximately 370 female employees.

In 1968 or early in 1969, the Company agreed with the two Locals and the International Union to merge the seniority list of its employees and to eliminate previous inequities as to job availability based on sex. Thereafter positions no longer were designated as men's or women's jobs and were to be open to bidding by all employees in the plant who were physically capable of performing the work, without regard to sex. However, the Local Unions continued to segregate their memberships and the processing of grievances by sex.

The constitution and by-laws of the International Union contain no provisions for discrimination on the basis of sex.

The collective bargaining agreement for 1971–74 was negotiated by a joint

bargaining committee composed of representatives of both Locals and the International Union and was ratified at a joint membership meeting of the two Local Unions. The agreement, which contains a union security clause, makes no distinctions because of sex or local union membership, and specifically provides that, in the administration and application of the contract, there shall be no discrimination by the company or Union against an employee because of sex. The contract grievance and arbitration procedures are open equally to members of both Locals, and unit members of both sexes. However, in practice, women must have their grievances investigated and handled by Local 245 and men must have their grievances investigated and handled by Local 106. The disposition of a grievance affects both male and female employees, regardless of which Local Union processes it.

There are 186 job classifications in the unit, of which 65 are performed by both men and women and 121 are performed by only one sex. Between 40 and 50 percent of the total work force is employed in unit job classifications that are performed by both men and women. At the time of the hearing, the beginning hourly rate in effect for jobs performed by both sexes ranged from a low of $3.190 to a high of $3.635. For jobs performed by one sex, the beginning hourly rate for the same period ranged from $3.190 to $4.445.

The Administrative Law Judge found, in effect, that the male and female employees received, equal, though separate, treatment and therefore there was no violation.

Rejecting the decision of the Administrative Law Judge the Board found that the Local Unions violated § 8(b)(1)(A) of the Act by maintaining segregated memberships, by separately processing grievances of male and female unit members and by refusing to process grievances because of the sex and union membership of employees.[1] The Local Unions were ordered to cease and desist from the unfair labor practices found. The Board ordered the Local Unions to merge; to admit to membership and process the grievance of any unit employee, upon request, without regard to sex; and to post appropriate notices. The majority opinion of the Board expressed the following conclusions:

> We cannot accept [The Administrative Law Judge's] reasoning. Separate but equal treatment on the basis of sex is as self-contradictory as separate but equal on the basis of race.[4]
>
> [4] Cf. *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, in which the Supreme Court held that segregation of children in public schools solely on the basis of race was "inherently unequal."
>
> In both areas separation in and of itself connotes and creates inequalities. Not only can separating females from males solely because of sex generate a feeling of inferiority among the females as to their work status, since the policy of separation is usually interpreted as reflecting the inferiority of

1. The Board's brief contains the following analysis of the decision:

   All five Board members agreed that the Unions' refusal to process and their separate processing of grievances violate Section 8(b)(1)(A); four members (Member Kennedy dissenting), found that the maintenance of segregated locals also violate Section 8(b)(1)(A); and four members (Member Jenkins dissenting), found no violation of Section 8(b)(2). Chairman Miller viewed the violation here as arising from the Unions' breach of the duty of fair representation "in that separate but allegedly equal representation is not fair representation". Member Penello, concurred in the finding that the Unions' maintenance of segregated locals vio-

lates Section 8(b)(1)(A) because, on the facts of this case, there is "an actual nexus between the discriminatory conduct" and "interference with the employees' Section 7 right to have a voice in the processing of grievances whose outcome can ultimately affect employee terms and conditions of employment". Member Kennedy dissented from the Board's finding that the Unions' discriminatory admission policies violate Section 8(b)(1)(A) because, in his view, there was no showing that the segregated memberships had an adverse effect on the "employment relationship" or that there was a nexus between the "alleged discriminatory conduct" and restraint of the employees' Section 7 rights.

the females, but also it can, as set forth below, adversely affect the working conditions of both groups solely because of the difference in sex.

For example, since, as mentioned previously, a grievance affects both male and female employees regardless of which Local processes the grievance, the employees whose Local did not process a grievance merely because of the grievant's sex are nonetheless bound by the outcome of the other Local's processing of the grievance. These employees have therefore, solely because of sex, been denied a voice in the resolution of matters affecting their working conditions.

Indeed, Respondent's sexual discrimination serves no useful purpose. The collective-bargaining agreement applies equally to all employees and makes no distinctions based on sex or local memberships. All jobs are open to both sexes. There are, thus, no special circumstances to justify the separate processing of grievances or the maintenance of separate locals.

Accordingly, we find that Respondents by maintaining locals whose memberships are restricted by sex and by refusing to process grievances because of the sex of the employees and their nonmembership in each of Respondents, respectively, restrained and coerced employees in the exercise of their Section 7 rights in violation of Section 8(b)(1)(A) of the Act.[5]

5 Chairman Miller would make clear that he views the violation herein as arising out of Respondent's failure fairly to represent the employees, in that separate but allegedly equal representation is not fair representation, as the Chairman understands the meaning of that term as used in *Miranda Fuel Company, Inc.,* 140 NLRB 181, and *Local No. 12, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO (The Business League of Gadsden),* 150 NLRB 312, enfd. 368 F.2d 12 (C.A. 5), cert. denied 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99. Although a majority of the Board, including the Chairman, held, in *Jubilee Manufacturing Company,* 202 NLRB No. 2, that employer discrimination on account of sex does not per se violate Sec. 8(a)(1), there was no union respondent and thus no issue

of fair representation posed in that case. As this Board said in *Miranda, supra,* at p. 185, ". . . labor organizations, because they do represent employees, have statutory obligations to employees which employers do not."

■ We agree with the conclusion of the Board.

Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute. . . . But where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited. (Citations omitted.) *N.L.R.B. v. Hearst Publications, Inc.,* 322 U.S. 111, 130–31, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944).

Giving the decision of the Board its proper weight, we agree that the maintenance of local unions, segregated by sex, and segregated handling of grievances, are unfair labor practices on the part of the Local Unions which restrain or coerce employees in the exercise of their § 7 rights.

Although the Local Unions assert that the majority of the women employees prefer to keep their separate union because it gives them "clout," it was stipulated that:

Certain women employees included within the unit designated under Article 3 of the collective bargaining agreement had requested membership in Local 106 at various times in October of 1971, and November of 1971, and such requests were denied or refused by Local 106.

The President of Local 106 testified that certain women employees in the unit had requested admission to Local 106 and that their requests had been denied. On at least one occasion some men employees requested and were granted permission to attend a meeting of Local 245.

Even assuming that a majority or even all the women in the unit preferred a separate union to attain "clout," and this is not clear from the record, we hold that the Board was justified in concluding that this would not provide a defense for the refusal of the joint bargaining representatives to admit to membership or to process the grievances of any unit employee, upon request, without regard to sex. In *N.L.R.B. v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967), the Supreme Court said:

> National labor policy has been built on the premise that by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions.

The rights of minorities are not forfeited by the merger of the Local Unions. These rights are protected by the duty imposed on the bargaining agent to represent fairly all employees in the unit.

The Unions contend that the Board's directive of a merger of the two Locals is an improper remedial order. We recognize that the statute prohibits the Board from interfering in local union affairs. Section 8(b)(1)(A) states that the section "shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." However, we conclude that the ordering of a merger of the two Local Unions, under the facts and circumstances of this case, does not constitute an unauthorized interference in local union affairs. It is well settled that the Board's discretion in formulating appropriate remedial relief is broad and that the scope of judicial review is narrow. *See Fibreboard Paper Products Corp. v. N.L.R.B.,* 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); *see also N.L.R.B. v. Gissel Packing Co.,* 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); *Virginia Electric & Power Co. v. N.L.R.B.,*

319 U.S. 533, 539–40, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); *Decaturville Sportswear Co. v. N.L.R.B.,* 406 F.2d 886, 888–89 (6th Cir. 1969).

Enforcement is granted.