Anthony John VALDIVIA, Plaintiff,

v.

**OHSE FOODS, INC.; Hudson Foods, Inc.; and United Food and Commercial Workers Local Union No. 576, Defendants.**

No. 91–4284–DES.

United States District Court, D. Kansas.

April 29, 1993.

---

Frankie D. Taff, Topeka, KS, for Anthony John Valdivia.

W. Stanley Churchill, Ross A. Hollander, Anthony J. Powell, Martin, Churchill, Overman, Hill & Cole, Chartered, Wichita, KS, for Ohse Foods, Inc., Hudson Foods, Inc.

Robert L. Dameron, Thomas H. Marshall, Blake & Uhlig, P.A., Kansas City, KS, for Local No. 576, United Food and Commercial Workers Intern. Union.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the separate motions for summary judgment submitted by defendants United Food and Commercial Workers Local Union No. 576 ("Union") and Ohse Foods, Inc. ("Ohse Foods"), a division of Hudson Foods, Inc.

## NATURE OF THE CLAIM

Plaintiff Anthony John Valdivia ("plaintiff") alleges that he was discharged from employment by Ohse Foods for excessive absenteeism, in breach of its collective bargaining agreement with the defendant Union. He further alleges that the defendant Union, his collective bargaining agent, breached its duty of fair representation. Plaintiff states a hybrid § 301/duty of fair representation claim, grounded in § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See United Steelworkers of America v. Rawson,* 495 U.S. 362, 373, 110 S.Ct. 1904, 1911, 109 L.Ed.2d 362 (1990); *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *Baker v. Interstate Brands Corp.,* 801 F.Supp. 456, 458 (D.Kan.1992); *McLinn v. Boeing Co.,* 715 F.Supp. 1024, 1029 (D.Kan.1989).

## JURISDICTION AND VENUE

This action was originally filed in Shawnee County District Court on November 15, 1991. The defendants subsequently removed it to this court pursuant to 28 U.S.C. §§ 1441 and 1446. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a). Venue is proper under 28 U.S.C. § 1391(b)(2).

## SUMMARY JUDGMENT GUIDELINES

Under Fed.R.Civ.P. 56(c), the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## FACTS

For the purpose of deciding the pending summary judgment motions, the court makes the following findings of fact, which are supported by the record when construed in the light most favorable to the plaintiff as the party opposing summary judgment.

Anthony Valdivia began his employment at Ohse Foods on March 28, 1988.[1] Defendant Union was designated the exclusive collective

---

1. Plaintiff was 25 years old when he began working at Ohse Foods. He testified at his deposition that he did not graduate from high school. While the court does not believe that plaintiff's age or lack of education are material to the resolution of this dispute, it may explain the plaintiff's expectations regarding the union's obligations in handling his grievance. Plaintiff's subjective views, however, are not relevant to the question of whether the Union breached its duty of fair representation.

bargaining agent for production workers at Ohse Foods. Plaintiff became a member of the Union shortly after he was employed by Ohse Foods as a production worker.

Prior to the date plaintiff was hired, rules and regulations on absenteeism were adopted by the company with the defendant Union's input. Characterized by the parties as a "no-fault" absenteeism policy, it permitted employees at least four and one-half unexcused absences from work within any six-month period, in addition to approved vacation time and excused absences for specified reasons such as funeral leave or hospitalization. However, if an employee exceeded the number of permissible unexcused absences in any six-month period, the policy provided for imposition of a four-step disciplinary process:

> If an employee's absences, minus the largest occurrence[*], exceeds [sic] four and one half (4½) days per 6 month period, the following action will be taken by the immediate supervisor:
>
> 1) First offense—Written or Verbal Warning
>
> 2) Second Occurrence—6 month period immediately following the first offense—One Day In Plant Suspension
>
> 3) Third Occurrence—Same 6 month period as Step 2—One Week In Plant Suspension
>
> 4) Fourth Occurrence—Same 6 month period as Step 2—Termination
>
> . . . .

[*] Occurrence is defined as: If an employee is absent for one working day or if an employee is absent for any number of consecutive working days, he is charged with one occurrence.

2. According to the absenteeism policy, plaintiff was also subject to "in plant suspension" for his second and third occurrences. The evidence reveals, however, that such "suspensions" were nominal. As long as the employee worked his regular schedule, he was paid as usual while on "in plant suspension." Hence, the parties' reference to the absenteeism policy as one of "progressive discipline" appears to be a misnomer.

3. It is undisputed that negotiations leading to the subsequent collective bargaining agreement, which took effect in November 1991, more than a year after plaintiff was terminated, incorporated this proposed change in the absenteeism poli-

As interpreted and applied by Ohse Foods, the first absence in excess of the limit in any six-month period was also deemed to be the first "occurrence" for purposes of the six-month fixed disciplinary period for excessive absences.

Pursuant to the absenteeism policy, plaintiff received warning letters for excessive unexcused absences on August 25, 1988 (first occurrence), August 30, 1988 (second occurrence), and October 12, 1988 (third occurrence).[2] The six-month disciplinary period expired, however, before he incurred a fourth unexcused absence, which would have otherwise subjected him to termination.

Effective November 5, 1988, a new collective bargaining agreement took effect. Under the agreement, Ohse Foods was precluded from discharging any employee except for just cause, defined as violating company rules or policies including, but not limited to, such things as sleeping on the job and consuming alcohol or drugs on company premises. The agreement also reserved to Ohse Foods the management right to adopt reasonable rules and regulations not in violation of the terms and conditions of the agreement.

While negotiating the new agreement, the Union proposed a change in the absenteeism policy to provide that the unexcused absence triggering imposition of the four-step disciplinary process for excessive absenteeism would not also count against the employee as an "occurrence" for purposes of the subsequent six-month disciplinary period. However, the company rejected the proposed change during negotiations, and the absenteeism policy continued in force as then interpreted and applied by the company.[3]

cy. In addition, what were separate written "Absenteeism Rules and Regulations" under the 1988 collective bargaining agreement became an explicit part of the agreement itself in 1991. The fact that the absenteeism policy was later modified, clarified, and formally incorporated into the 1991 collective bargaining agreement, however, does not diminish the applicability or the validity of the 1988 rules and regulations on excessive absenteeism. In negotiating the 1988 agreement, the Union yielded to the company's position that the rules and regulations would continue in place as they were then interpreted and applied by Ohse Foods.

Thereafter, plaintiff received warning letters pursuant to the absenteeism policy on April 10, 1989 (first occurrence), April 19, 1989 (second occurrence), and May 10, 1989 (third occurrence). As in 1988, however, the plaintiff did not reach the fourth step of the disciplinary process because he logged only three "occurrences" within the applicable six-month disciplinary period. Plaintiff subsequently had several additional unexcused absences from work in the latter half of 1989.

Plaintiff was again absent from work on January 4 and 5, 1990. These absences triggered plaintiff's third six-month disciplinary period for excessive unexcused absences within two years after he was hired. Plaintiff was given a written warning on January 7, 1990, informing him that the next occurrence would trigger a one-day in-plant suspension. On February 7, 1990, he was given another written warning following his unexcused absences on February 5 and 6, informing him that the next occurrence would result in a one-week in-plant suspension. On March 5, 1990, he was again given a written warning after his unexcused absence on March 2, 1990. This warning letter stated that the next occurrence would result in his termination. Plaintiff did not file grievances concerning any of the written warnings he received in 1988, 1989, or 1990.[4] Nor does he contend that any of these absences should have been deemed excused absences under the policy.

On July 7, 1990, a Saturday, plaintiff knew he was expected to work overtime during his regular shift. However, he telephoned the plant supervisor prior to the time he was to start work and reported that he would not be in.[5] The plant superintendent, John Gaffney, asked whether he would be at work the next day, and the plaintiff responded that he would. On Sunday, plaintiff worked his regular shift. However, when he reported to work on Monday, July 9, 1990, he was informed he had been terminated for excessive absenteeism, because he had reached the fourth step of the disciplinary process.

After he was told he was terminated, plaintiff inquired of the union steward, James Lundgren ("Lundgren"), whether there was anything he could do to get his job back, and specifically whether Lundgren thought plaintiff should file a grievance. Construed in the light most favorable to the plaintiff, the evidence indicates that Lundgren stated he did not think filing a grievance would do any good.[6] Having thought it over while returning home from work, plaintiff called Tim McGrew ("McGrew"), the Union's business representative, and explained the situation to him.[7] Plaintiff's position was that his third six-month disciplinary period for excessive absences began on January 5, 1990, the day he was actually absent from work, and ended July 5, 1990. Since his last absence was on July 7, 1990, after the six-month disciplinary period had elapsed according to his calculations, he believed that absence should not have triggered his termination. Plaintiff asked McGrew to file a grievance for him. McGrew agreed to do so, although he did not indicate whether he believed plaintiff's grievance had merit.

---

4. In fact, it is undisputed that the plaintiff intended to take full advantage of whatever absences he was permitted under the "no-fault" absenteeism rules and regulations.

5. Plaintiff testified by deposition that he did not report for work because he had a cold, and because he had anticipated a problem with child care due to his wife's overlapping work schedule. Neither of these reasons was among the several categories of excused absences under the absenteeism rules and regulations. Plaintiff admitted at his deposition that had he known his job would be jeopardized by his absence, he would have reported to work.

6. Lundgren's affidavit concedes he did not believe plaintiff had a meritorious grievance, given his past history of excessive absences. The infer-

ence plaintiff urges the court to draw is that Lundgren dissuaded plaintiff from filing a grievance when he expressed his desire to do so.

7. Tim McGrew took over as business representative for the union in mid–1990, replacing Jerry Helmick. While Helmick was serving as business representative in early 1990, he sent a formal letter on behalf of the Union challenging each of the warning letters issued to plaintiff following his January 4–5 absences. It is undisputed that these letters did not amount to grievances, but they were intended to help protect the rights of the employee in the event the absences resulted in discharge.

Over the next few days, McGrew contacted Les Broadbent ("Broadbent"), the plant manager, and sought reinstatement of plaintiff. His efforts were unsuccessful. On July 13, 1990, McGrew called plaintiff and told him that Broadbent had refused to give him his job back. When plaintiff asked about the next step, McGrew indicated that the grievance process was underway. That same day, McGrew wrote a letter to Broadbent, stating that because they were unable to resolve plaintiff's termination at the meeting, the Union was filing a formal grievance regarding his termination. A standard grievance form was filed by McGrew on plaintiff's behalf dated July 13, 1990. Although the pre-printed form contained a space for the employee's signature as well as that of the union representative, McGrew did not obtain plaintiff's signature on the form.[8]

A couple of weeks after he was terminated, plaintiff read the collective bargaining agreement provisions concerning grievance procedures to determine what process McGrew was undertaking on his behalf.[9] After reading the agreement, plaintiff concluded that he should have filed a written grievance over his signature.[10]

In a telephone conversation in August 1990, McGrew indicated to plaintiff that "something went wrong" and that "[plaintiff] could sue him if [he] wanted." McGrew did not indicate to plaintiff just what had gone wrong. This evidence supports an inference that McGrew discovered that the procedure he had used for pursuing the grievance was flawed in some way, to the detriment of the plaintiff.

In a letter dated September 13, 1990, McGrew informed the plaintiff that the Union had determined, after consulting with legal counsel, that the Union would not be successful before a neutral arbitrator if it were to pursue arbitration of plaintiff's grievance.[11] The letter explained that plaintiff

8. The documents on file with the court indicate there is some dispute concerning the actual date McGrew prepared the form. The evidence could also support an inference that even if McGrew timely prepared the form, he did not submit it to the appropriate company officials. However, even if McGrew did not timely submit the grievance form itself, his letter to Broadbent on July 13, 1990, formally notified the company about the grievance. Furthermore, subsequent correspondence by Union ·representatives indicates that all parties considered plaintiff's grievance a pending matter until the outcome of the arbitration process.

9. The collective bargaining agreement included the following pertinent provisions concerning the grievance process:

5. *GRIEVANCE AND ARBITRATION PROCEDURE*—The Union shall establish the following procedure for handling grievances:
A. The Grievance shall be in writing and signed by the Aggrieved Party.
B. The Union Steward shall take the Grievance Form and notify the Local Union office.
C. The Steward, Aggrieved Party, and Local Union Representative shall set up a meeting with the Company.
D. The Company, ... shall ... meet and confer with the Grievance Committee of the Union at any appropriate time, ... with the view of composing [sic] any difference or dispute that may arise. ....
6. All grievances shall be presented in writing within seven (7) calendar days. Any grievance not presented according to the aforementioned conditions shall be waived by the ag-

grieved parties. The Company shall have seven (7) calendar days to act upon all grievances.
7. In the event the Grievance Committee and the Company representatives are unable to satisfactorily adjust any differences, ... the matter shall be referred to arbitration.
8. Arbitration shall proceed before an arbiter selected by the parties. ....
9. The arbiter shall hear the matter in dispute as soon as possible. The arbiter shall render his decision as expeditiously as possible and the same shall be final and binding upon both parties, subject to the limitations of such arbiter as set forth elsewhere in this Agreement.

....
11. The arbiter shall have no authority to add to, subtract from, modify, change, or alter any of the terms of this Agreement and the arbiter's award shall be rendered within the scope of his authority.

10. However, the record includes no evidence that he contacted McGrew to ensure that this requirement was met, or to determine whether there was a way to remedy his failure to comply with the signature requirement.

11. Plaintiff disputes that McGrew ever consulted with legal counsel concerning the merits of his grievance. Although the evidence may support an inference that this is in fact the case, the court does not consider this to be a material issue. Since the matter was ultimately submitted to arbitration by the Executive Board, its action effectively reversed the Union's previous position that the grievance lacked merit. Whether the

had a right to appeal this decision to the Union Executive Board, and plaintiff successfully did so.

At the arbitration hearing on July 25, 1991, counsel for the Union argued plaintiff's position—that the six-month disciplinary period leading to his termination had in fact elapsed on July 5, 1990, exactly six months after the absence that triggered imposition of the probationary period. Ohse Foods disagreed, arguing that the absenteeism rules and regulations had been consistently interpreted to start the six-month disciplinary period on the date the employee **receives written warning** that he is on the first step of the four-step disciplinary process, in this case, January 7, 1990. The company argued that because plaintiff had his fourth unexcused absence on July 7 within six months of January 7, the date of his first "offense," defined by the company as the written warning, he was properly terminated under the absenteeism policy.

The arbitrator determined the dispute in favor of Ohse Foods on the reasoning that the plaintiff had not signed the grievance form, noting he was without authority to alter or ignore the collective bargaining agreement's requirement that plaintiff personally sign the grievance form.[12] The arbitrator's written decision was issued on September 9, 1991.

Plaintiff filed suit less than three months after the adverse arbitration determination, claiming that Ohse Foods discharged him in violation of the collective bargaining agreement and that the Union breached its duty of fair representation.

## INTERRELATION OF PLAINTIFF'S CLAIMS

Plaintiff's essential claim is that Ohse Foods violated the collective bargaining agreement by discharging him for excessive absences. He is entitled to bring this suit on his own behalf under 29 U.S.C. § 185(a). *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962). However, since his claim is based on breach of the collective bargaining agreement, he is bound by the terms of that agreement governing the manner in which his contractual rights may be enforced. *See Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967) (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)); *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1273 (D.Kan.1985) (citing *Republic Steel*).

Nevertheless, the United States Supreme Court has recognized that such contractual remedies, devised by and often directly controlled by the union and the employer, may be unworkable for individual grievants in certain situations. *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914. Consequently, the Court has recognized that a plaintiff may seek judicial enforcement of his contractual right if he can prove that the Union, as bargaining agent, breached its duty of fair representation in handling his grievance, thereby frustrating his attempts to vindicate his termination by contractual remedy. *See Vaca,* 386 U.S. at 186, 87 S.Ct. at 914. In such a case the court may determine whether plaintiff's suit against the employer is barred on the basis of the actions of his union representative on his behalf, and, if not, to proceed on to decide the case against the employer. *Id.* at 186–87, 87 S.Ct. at 914–15; *see also United Parcel Service, Inc. v. Mitchell,* 451

---

initial position was reached with or without the consultation of legal counsel is beside the point.

12. The arbitrator parenthetically noted that plaintiff's construction of the absenteeism policy was plausible. This court agrees. The company's interpretation of the policy is inconsistent with the language defining the six-month disciplinary period as that *"immediately* following the first offense" (emphasis added). Ohse's definition of "offense" as the written warning rather than the absence itself is a strained construction of the language. Contrary to defendants' contentions, the fact that the rules and regulations were consistently interpreted and applied in this manner does not render the interpretation a correct one. A new employee unfamiliar with past practice in interpreting the language might well understand it to mean that the date of the absence triggering imposition of the disciplinary process would also be the first day of the six-month probationary period.

U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981) (indispensable predicate for action against employer under 29 U.S.C. § 185(a) is a demonstration that union breached its duty of fair representation). Otherwise, a wrongfully discharged employee· could be frustrated in obtaining a remedy against the employer solely because his union breached its separate duty to fairly represent him in pursuing the grievance process. *Id.; see also Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 570, 96 S.Ct. at 1059.

If the Union did not breach its duty of fair representation in pursuing plaintiff's grievance, his claim against Ohse Foods for wrongful discharge necessarily also fails, because of the exclusive nature of the remedies provided plaintiff by the collective bargaining agreement. *See Vaca,* 386 U.S. at 185, 87 S.Ct. at 914 (if union has sole power to invoke higher stages of grievance procedure, and if employee has been prevented by the union from exhausting his contractual remedies by wrongfully refusing to process the grievance, employee may sue employer despite failure to secure relief through contractual remedy); *Jarvis v. Nobel/Sysco Food Services Co.,* 985 F.2d 1419, 1422 (10th Cir. 1993) (because most collective bargaining agreements accord finality to grievance or arbitration procedures, employee normally cannot bring § 301 action against employer unless he can show union breached its duty of fair representation) (quoting *Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990)).

■ Consequently, plaintiff may sue Ohse Foods directly for wrongful discharge, but only if he can establish that the defendant Union breached its duty of fair representation. In order to prevail in a court action against the employer under 29 U.S.C. § 185(a), the plaintiff must first prove the union breached its duty of fair representation, and further that he was wrongfully discharged by the employer in breach of the contract. However, proof that the grievance against the employer was meritorious is insufficient by itself to show a breach by the Union of its duty of fair representation. *See Vaca,* 386 U.S. at 193, 195, 87 S.Ct. at 918,

919; *McLinn v. Boeing Co.,* 715 F.Supp. 1024, 1031, 1033 (D.Kan.1989) (citing *Salinas v. Milne Truck Lines, Inc.,* 846 F.2d 568, 569 (9th Cir.1988) and *Brown, v. Trans World Airlines, Inc.,* 746 F.2d 1354, 1359 (8th Cir. 1984)).

■ When the employee's grievance is ultimately arbitrated or otherwise brought to ultimate binding resolution under the collective bargaining agreement, resulting in a finding in favor of the defendant employer, the plaintiff must bear a heavier burden to prevail in court on his wrongful discharge claim. *See DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 155, 157, 103 S.Ct. 2281, 2285, 2286, 76 L.Ed.2d 476 (1983); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. at 58, 61, 101 S.Ct. at 1561–62, 1563 (employee may go behind final and binding award under collective bargaining agreement and seek relief against union and employer only if he shows the union's breach of duty seriously undermined the integrity of the arbitral process); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 567–68, 96 S.Ct. at 1058 (if union's breach of duty seriously undermines the integrity of the arbitral process, it removes the bar of the finality provisions of the contract).

If plaintiff cannot demonstrate a breach of the Union's duty of fair representation, he is limited to his exclusive contractual remedies, which concluded in this case with the arbitrator's decision that the plaintiff waived his grievance by failing to personally sign the grievance form. If the plaintiff cannot survive defendant Union's motion for summary judgment on the issue of its duty of fair representation, his wrongful discharge claim against Ohse Foods automatically fails. On the other hand, if plaintiff survives the Union's motion for summary·judgment, he may prevail against Ohse Foods if he can establish at trial that (1) the Union breached its duty of fair representation and (2) he was discharged in violation of the collective bargaining agreement. Plaintiff need not establish a violation of the collective bargaining agreement, however, in order to survive the Union's motion for summary judgment.[13]

---

13. Of course, the plaintiff must establish his claims against both defendants in order to recov-

## DUTY OF FAIR REPRESENTATION

Plaintiff claims that the Union breached its statutory duty of fair representation it owed to him as his collective bargaining agent. Specifically, he contends that the Union breached its duty by (1) yielding to the company's insistence on retaining the current absenteeism rules and regulations in negotiating the November 1988 agreement despite the fact that the rules and regulations were inconsistent with the collective bargaining agreement; (2) dissuading him from filing a grievance; (3) misrepresenting to him that the grievance process was underway; and (4) failing to get plaintiff's signature on the grievance form.

 The United States Supreme Court has identified three components to the duty of fair representation. The duty may be breached if the Union's actions are either "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n v. O'Neill,* —— U.S. ——, ——, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991); *Vaca v. Sipes,* 386 U.S. at 177, 190, 87 S.Ct. at 910, 916–17. The United States Supreme Court has held that mere negligence, even in the enforcement of a collective bargaining agreement, does not state a claim for breach of the duty of fair representation. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372–73, 376, 110 S.Ct. 1904, 1911, 1913, 109 L.Ed.2d 362 (1990). The doctrine of fair representation is a purposefully limited check on the arbitrary exercise of union power, because a statutory bargaining representative must be allowed a wide range of reasonableness in serving the unit it represents. *Id.* at 374, 110 S.Ct. at 1912 (citing *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)).

 Plaintiff does not contend that the union discriminated against him in any way in handling the grievance.[14] Therefore, the issue in this case is whether the Union acted arbitrarily or in bad faith. A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Air Line Pilots Ass'n v. O'Neill,* —— U.S. at ——, ——, 111 S.Ct. at 1130, 1136. A union's conduct is in bad faith only if there is substantial evidence of fraud, deceitful action, or dishonest conduct. *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964); *see Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1275 (D.Kan.1985) (plaintiff alleged conspiracy between union and employer to circumvent collective bargaining agreement by reopening employer's plant under different name).

 The plaintiff initially argues that the 1988 absenteeism policy was contrary to the terms of the collective bargaining agreement itself, and the Union therefore breached its duty of fair representation by agreeing to the policy. The court does not find any

---

er any monetary damages from either defendant. See *Local No. 391 v. Terry,* 494 U.S. at 564, 110 S.Ct. at 1344, *quoted in Jarvis v. Nobel/Sysco Food Services Co.,* 985 F.2d at 1422.

**14.** For the union's actions to be discriminatory in violation of the duty of fair representation, they must be based on invidious distinctions such as race, gender, national origin, or citizenship; or they must exhibit hostility based on political differences, exercise of free speech, or personal animosities. *See, e.g., Air Line Pilots Ass'n,* —— U.S. at ——, 111 S.Ct. at 1134 (invidious distinctions); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 202–03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944) (race); *N.L.R.B. v. Local No. 106 Glass Bottle Blowers Ass'n,* 520 F.2d 693, 697 (6th Cir.1975) (gender); *N.L.R.B. v. International Longshoremen's Ass'n, Local No. 1581,* 489 F.2d 635, 637 (5th Cir.) (national origin), *cert. denied,* 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 316 (1974); *Thompson v. Brotherhood of Sleeping Car Porters,* 316 F.2d 191, 200 (4th Cir.1963) (hostility based on sporadic union membership); *see also International Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 60, 99 S.Ct. 2121, 2132, 60 L.Ed.2d 698 (1979) (Blackmun, J., concurring). Distinctions on the basis of factors relevant to the collective bargaining agreement, such as seniority, the type of work performed, competence, and skill, do not constitute a breach of the duty of fair representation. *See Steele,* 323 U.S. at 203, 65 S.Ct. at 232; *Thompson,* 316 F.2d at 200. A claim of discrimination as the basis of a breach of the duty of fair representation requires "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives...." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). No such evidence has been presented in this case.

inconsistency between the absenteeism policy and the terms and conditions of the collective bargaining agreement. Even if there were, however, the plaintiff never filed a grievance challenging the validity of the absenteeism rules and regulations generally, or their application to him in particular. To the extent plaintiff contends that the Union breached its duty of fair representation in negotiating the agreement, the defendants correctly argue that the six-month statute of limitations expired as to any such challenge long before the plaintiff filed his complaint in this action. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983) (aggrieved employee must file hybrid § 301/fair representation claim within six months of the unfair labor practice, in this case the alleged breach of the union's duty).[15]

 Plaintiff's primary arguments are that the Union breached its duty of fair representation by initially dissuading him from filing a grievance, and by failing to obtain his signature on the grievance form. However, an employee has no absolute right to have the union take his grievance through every stage of the grievance process. *Chernak v. Southwest Airlines Co.*, 778 F.2d 578, 581 (10th Cir.1985) (citing *Vaca*, 386 U.S. 171, 87 S.Ct. 903 (1967)); *Baker v. Interstate Brands Corp.*, 801 F.Supp. 456, 464 (D.Kan. 1992); *McLinn v. Boeing Co.*, 715 F.Supp. 1024, 1031 (D.Kan.1989). Nor can the plaintiff compel the union to pursue a grievance having no legal merit.[16] *Chernak*, 778 F.2d at 581.

 The court's careful review of the record on summary judgment reveals no factual controversy material to the issue of whether the defendant Union complied with its duty to fairly represent the plaintiff in pursuing his grievance. Construing the record in the light most favorable to the plaintiff, the court cannot conclude that there is any material issue of disputed fact as to whether the Union breached its duty of fair representation by acting arbitrarily or in bad faith.

Plaintiff had a record of unexcused absences that were well documented. He had been placed on the six-month disciplinary program for excessive absenteeism on two prior occasions during his relatively brief tenure at Ohse Foods. He was placed on the disciplinary program a third time on January 7, 1990. After incurring three unexcused absences, he was warned in writing of the possibility of discharge if he were again absent within his third six-month disciplinary period. The plaintiff acknowledged that he understood the rules and regulations on excessive absences and the written warnings regarding his unexcused absences.

The court need not, and does not, decide whether plaintiff's discharge by the employer violated the collective bargaining agreement or the rules and regulations. However, the court cannot conclude that any reasonable juror could find that the Union's actions with regard to plaintiff's grievance were so far outside a wide range of reasonableness as to be irrational. *See Air Line Pilots Ass'n v. O'Neill*, —— U.S. at ——, 111 S.Ct. at 1130. Nor has the plaintiff identified any facts that could be the basis of a conclusion that the alleged breach of duty by the Union seriously undermined the integrity of the arbitral process. *See United Parcel Service, Inc. v.*

---

15. Furthermore, the court considers any connection between the Union's 1988 contract negotiations and the company's discharge of the plaintiff for excessive absences to be too attenuated to support an inference that plaintiff would not have been discharged but for the Union's conduct in negotiating the 1988 agreement.

16. The court does not accept the defendants' arguments that they are not liable because the grievance had no legal merit. The language of the rules and regulations on absenteeism was at best ambiguous. Nevertheless, the reluctance of certain Union representatives to pursue the grievance because they considered the grievance lacking in merit was reasonable considering the

employer's consistent enforcement of the regulations and the plaintiff's prior history of excessive absences. On the basis of the collective bargaining agreement alone, the court would have no trouble holding as a matter of law that the plaintiff was discharged with "just cause" for his excessive absences. However, having adopted the "no-fault" rules and regulations on excessive absenteeism, the employer is bound by them in determining whether to discharge an employee on that basis. Stated another way, the rules and regulations themselves defined the collective bargaining agreement's term "just cause" for discharge on the basis of excessive absenteeism.

*Mitchell,* 451 U.S. 56, 61, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567–68, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976).

The record before the court may well support an inference that some of the Union representatives were negligent in failing to strictly follow the grievance procedure set out in the collective bargaining agreement, or in failing to obtain the plaintiff's signature on the grievance form. However, mere negligence on the part of union representatives is not a sufficient basis on which to rest a finding of a breach of the duty of fair representation. *See United Steelworkers of America v. Rawson,* 495 U.S. 362, 372–73, 376, 110 S.Ct. 1904, 1911, 1913, 109 L.Ed.2d 362 (1990); *Le'Mon v. N.L.R.B.,* 952 F.2d 1203, 1205 (10th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 93, 121 L.Ed.2d 55 (1992).[17]

Further, the plaintiff has not alleged facts sufficient to support his claim that the defendant Union acted in bad faith. It is uncontroverted that Tim McGrew prepared a grievance form on behalf of the plaintiff, and he met on plaintiff's behalf with Les Broadbent, the plant manager, to try to negotiate his reinstatement. After this request was denied, McGrew consulted with other union officials and determined that the grievance would not be submitted to arbitration. However, when plaintiff appealed this decision, he succeeded in persuading the Union Executive Board to arbitrate his discharge. At the full-day arbitration hearing, the Union's attorney advocated for plaintiff's position that the six-month disciplinary period should have started on January 5 and ended July 5, 1990, and if so, his unexcused absence on July 7, 1990, would not have triggered his discharge under the rules and regulations on excessive absenteeism. While the arbitrator determined that the plaintiff's argument had merit, he concluded that the plaintiff had waived his grievance by failing to sign the grievance form. Under the collective bargaining agreement, the arbitration decision is final

and binding on both the plaintiff and defendant employer.

Plaintiff does not contend that any of the Union representatives harbored any personal hostility toward him or acted on the basis of any improper motive. At most, the evidence simply supports an inference that some of the union representatives did not believe plaintiff had a meritorious claim. Where there are rational, good faith reasons for not pursuing a grievance, the fact that the grievance may have ultimately turned out to have merit on a technical construction of the absenteeism rules and regulations does not, by itself, support a finding of bad faith or perfunctory conduct. *See Vaca v. Sipes,* 386 U.S. at 190–95, 87 S.Ct. at 916–19. Nor has plaintiff submitted more than a scintilla of evidence in support of his claim that McGrew misrepresented that the grievance process was underway. Even assuming McGrew did make such a misrepresentation, the fact that the grievance was ultimately arbitrated by the Union and Ohse Foods shows that the grievance ultimately followed the process envisioned in the collective bargaining agreement.

In summary, plaintiff has failed to present sufficient acceptable evidence to demonstrate the existence of any factual issues precluding summary judgment in favor of defendant Union, given the substantial deference the law accords the Union in representing its members. *See McLinn v. Boeing Co.,* 715 F.Supp. at 1032.

## CONCLUSION

Because the plaintiff has not shown the existence of any genuine issue of material fact pertinent to his claim against the Union for breach of its duty of fair representation, the court must grant summary judgment in favor of defendant Union. As a consequence, plaintiff is barred as a matter of law from pursuing his wrongful discharge claim against his former employer, Ohse Foods.

---

17. Furthermore, the plaintiff must accept some responsibility for failing to personally sign the grievance form. Had he familiarized himself earlier with the collective bargaining agreement, he would have known about the signature requirement in time to ensure that a signed grievance form was filed within seven calendar days of his discharge. The agreement explicitly provided that a grievance not presented in compliance with the conditions of the contract would be waived by the aggrieved party.

He is limited to his grievance and arbitration remedies under the collective bargaining agreement, which have been exhausted.

**IT IS BY THE COURT THEREFORE ORDERED** that the motion of defendant United Food and Commercial Workers Local Union No. 576 for summary judgment (Doc. 64) is hereby granted.

**IT IS FURTHER ORDERED** that the summary judgment motion (Doc. 67) of defendants Ohse Foods, Inc., a division of Hudson Foods, Inc., is hereby granted.

**IT IS FURTHER ORDERED** that the parties' pending motions in limine (Docs. 52, 63, 78, and 82) are hereby denied as moot.