FUENTES, Circuit Judge, concurring.
For decades, our jurisprudence has denounced the very notion of "separate, but equal" policies. In Brown v. Board of Education , the Supreme Court recognized that "the doctrine of 'separate but equal' has no place" because separate facilities are "inherently unequal."[1] The Court was even more explicit in Loving v. Virginia : "[W]e reject the notion that the mere 'equal application' of a statute containing racial classifications is enough to remove the classifications from the Fourteenth Amendment's proscription of all invidious racial discriminations...."[2]
Our vehement disapproval of segregation does not weaken when we adjudicate sex discrimination rather than racial discrimination cases. "Separate but equal treatment on the basis of sex is as self-contradictory as separate but equal on the basis of race."[3] In Healey v. Southwood Psychiatric Hospital , we explained that "[w]hen open and explicit use of gender is employed ... the systemic discrimination is in effect 'admitted' by the [defendant], and the case will turn on whether such overt disparate treatment is for some reason justified" under the relevant statute.[4]
*412 While the majority opinion explains that we do not reach the issue of "whether sex-segregated swimming hours necessarily violate the FHA,"[5] I write separately to express my skepticism that the pool's sex-segregated schedule could be saved by a more even allocation of evening hours between men and women. Our jurisprudence makes clear that facial discrimination does not become lawful merely because its burdens are felt by members of both sexes. We would have no problem concluding, for example, that a pool schedule that allocates two-thirds of its hours to swimming segregated by race and one-third of its hours to "Integrated Swimming" would be intolerable under the FHA. And the FHA's prohibition on discrimination does not distinguish between discrimination on the basis of sex and discrimination on the basis of race.[6]
We have never considered whether there may be exceptions to the FHA's antidiscrimination provision.[7] Our sister circuits that have considered the issue have determined that in certain circumstances, there may be legal justifications for facial discrimination under the FHA. The Sixth, Ninth, and Tenth Circuits have concluded that facially discriminatory policies may be justified if a defendant can show that the policies benefit the protected class or respond to legitimate safety concerns.[8] The Eighth Circuit uses a different standard, requiring defendants to demonstrate that the facially discriminatory policy "was necessary to promote a governmental interest commensurate with the level of scrutiny afforded the class of people affected by the law under the equal protection clause."[9]
There are two reasons why we need not now determine whether to adopt one of the tests put forth by our sister circuits. First, as the majority opinion rightly concludes, in this case there is evidence of both facial discrimination and disparate treatment. The stark difference between men's swimming hours and women's swimming hours during weekday evenings is fatal to the pool schedule because it perpetuates stereotypes about the relative likelihood of men and women to be working during those hours. The Condominium Association attempted to justify the disparity by pointing to the deposition testimony of Ms. Engleman, who stated that on Friday afternoons, women are home preparing for the Shabbat holiday. The testimony is *413 equivocal as to whether preparation for Shabbat is a religious mandate or a cultural practice that could be rooted in gender stereotypes about the role of women in homemaking. If it is the latter, of course, it cannot justify the discriminatory treatment of women. "[G]eneralizations about 'the way women are,' [and] estimates of what is appropriate for most women , no longer justify denying opportunity to women...."[10] Even if Ms. Engleman were explaining a religious requirement, her reasoning cannot justify the disparity between men's hours and women's hours on Mondays through Thursdays.
Second, regardless of the test we adopted, the Condominium Association's justifications would fail. Although the Association defends its discrimination on the basis of the religious concerns of its Orthodox Jewish members,[11] it did not argue that its discriminatory schedule was justified under any recognized exception to the FHA's antidiscrimination provision. Specifically, it did not assert that the association's policies benefitted the affected protected class (here, women) or that they responded to legitimate safety concerns.[12] It also waived any argument that its discrimination was protected by the Religious Freedom Restoration Act. The Association instead argued that if it did not discriminate on the basis of sex, it would be discriminating against its Orthodox Jewish population because they would be unable to use the swimming pool due to religious modesty laws. But there is no evidence in the record of the number of Orthodox Jewish residents who use the pool, and no evidence of the number of Orthodox Jewish pool users who would be unable to use a mixed-sex pool due to religious objections.[13] At the very least, at the summary judgment stage, the Condominium Association was required to put forward more than speculation about the effects of integrating the swimming pool.
In sum, I join the majority decision to reverse the decision of the District Court not only because of the pool schedule's disparate treatment of women, but also because it is per se facially discriminatory in violation of the FHA.

347 U.S. 483, 495, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

388 U.S. 1, 8, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

N.L.R.B. v. Local 106, Glass Bottle Blowers Ass'n , 520 F.2d 693, 695 (6th Cir. 1975).

78 F.3d 128, 132 (3d Cir. 1996). Although Healey was an employment discrimination case, we frequently rely on our Title VII jurisprudence to guide our understanding of the FHA's antidiscrimination provisions. See Cmty. Servs., Inc. v. Wind Gap Mun. Auth. , 421 F.3d 170, 176 n.5 (3d Cir. 2005).

Maj. Op. at 407-08.

42 U.S.C. § 3604(b) (prohibiting discrimination "because of race, color, religion, sex, familial status, or national origin").

Section 3607 creates a narrow exception by allowing religious organizations that sell or rent housing to give preference to members of the same religion, unless membership in the religion itself is "restricted on account of race, color, or national origin." See id. § 3607(a). That exception is inapplicable here.

Cmty. House, Inc. v. City of Boise , 490 F.3d 1041, 1050 (9th Cir. 2007) ; Larkin v. State of Mich. Dep't of Soc. Servs. , 89 F.3d 285, 290 (6th Cir. 1996) ; Bangerter v. Orem City Corp. , 46 F.3d 1491, 1503-04 (10th Cir. 1995). As an example of how analysis of gender-based facial discrimination under the FHA might work, in Community House v. City of Boise , the Ninth Circuit determined that a religious homeless shelter's policy of excluding women and families was facially discriminatory "because it explicitly treats women and families different from men." Cmty. House , 490 F.3d at 1045. The court also addressed the shelter's suggestion that it would create a separate shelter for women and families, casting doubt on that justification because "there is a serious question that sheltering women and families ... separately from men would benefit women and families by satisfying a required safety need." Id. at 1052.

Familystyle of St. Paul, Inc. v. City of St. Paul , 923 F.2d 91, 93 (8th Cir. 1991).

United States v. Virginia , 518 U.S. 515, 550, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

The contemporaneous evidence suggests that the Association justified the pool schedule as the will of the majority rather than as a necessary accommodation to Orthodox Jewish residents. The Association informed Ms. Curto that "[t]he vast majority of people would abolish any mixed swimming, because that is the will of the majority." J.A. 174. The Association also informed Mr. Lusardi that "we are well within our rights to serve the vast majority of the community.... You are inconsiderate of the majority and wish for minority rule. That is not our community." J.A. 176.

See Cmty. House, Inc. , 490 F.3d at 1050.

In her deposition, Ms. Engleman said that all Orthodox Jews would oppose mixed swimming, but later admitted that some religious laws are open to different interpretations, like laws requiring men and women to remain separate in public spaces.